UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CAROLYN D. ROSS,<br>    *Plaintiff* | :<br>:<br>: |
| Vs. | :    C.A. No. 21-cv-00118-JJM-LDA |
| | : |
| COX RHODE ISLAND<br>TELECOM, LLC d/b/a COX<br>COMMUNICATIONS, alias, and<br>COXCOM, LLC, d/b/a COX<br>COMMUNICATIONS NEW<br>ENGLAND, alias,<br>    *Defendants* | :    <u>Jury Trial Demanded</u><br>:<br>:<br>:<br>:<br>:<br>: |

## **AMENDED COMPLAINT**

### I.     Introduction

1. This action is brought by Carolyn D. Ross ("Plaintiff") seeking declaratory and injunctive relief and compensatory, liquidated, and punitive damages for acts and/or omissions of Cox Rhode Island Telcom, LLC d/b/a Cox Communications, alias, and Coxcom, LLC d/b/a Cox Communications New England, alias, ("Defendants") in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA"); the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, *et seq.* ("FEPA"); and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, *et. seq.* ("RICRA").

### II.     Parties

2. Plaintiff, Carolyn D. Ross, at all times relevant to this action, was a resident of the Town of Burrillville, County of Providence, State of Rhode Island.

3. Defendant Cox Rhode Island Telcom, LLC d/b/a Cox Communications, alias, ("Cox" or "Defendant") and CoxCom, LLC, d/b/a Cox Communications New England, alias (hereinafter, collectively referred to as "Defendant Cox") are corporations organized under the laws of the State of Delaware with a principal place of business located at 1400 Lake Hearn Drive, Atlanta, Georgia.

### III.   Jurisdiction

4. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the ADEA.

5. Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

### IV.   Venue

6. Venue is proper in this Court insofar as the Defendant resides in or is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island and a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within the State of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.   Exhaustion of Administrative Remedies

7. On or about January 13, 2020, Plaintiff filed a Charge alleging age discrimination with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC").

8. Thereafter, with more than 120 days but not more than two (2) years having elapsed since the filing of Plaintiff's charge of discrimination, Plaintiff filed a Request for Notice of Right to Sue with the RICHR and the EEOC.

9. On or about February 12, 2021, Plaintiff was issued a Notice of Right to Sue by the RICHR.

10. On or about February 16, 2021, Plaintiff requested a Notice of Right to Sue from the EEOC.

11. Accordingly, insofar as she has satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit, the Plaintiff has timely instituted suit in the within matter.

12. There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

### VI. Material Facts

13. Plaintiff was born on August 7, 1962 and was fifty-seven (57) years of age at the time of the events at issue alleged herein.

14. Plaintiff was a loyal, experienced, productive, results-oriented, and dedicated employee of Defendant for over thirty-four (34) years.

15. Since on or about 2008, Plaintiff had been employed by Defendant as an Account Service Representative.

16. On or about June of 2018, Plaintiff was suddenly placed on a later shift, from 11 a.m. to 8 p.m.

17. On this later shift, Plaintiff had two paid fifteen (15) minute breaks, which Plaintiff usually took around 1:45 p.m. and 6:30 p.m., and an unpaid hour for lunch, which Plaintiff usually took around 3 p.m.

18. In May 2019, Plaintiff's supervisor went out on maternity leave and was temporarily replaced by Kayode Mayowa ("Mr. Mayowa"), the Technical Supervisor of the Technical Department.

19. Upon information and belief, Mr. Mayowa was age thirty-nine (39) during the relevant time period at issue in this case.

20. At some point on or around June of 2019, Plaintiff began logging out of the computer call system when she was taking her break, lunch, or leaving for the day in a different way than she had before.

21. While still on her last call before going on break or leaving for the day, Plaintiff began logging out on the computer so that she was removed from the list to receive calls instead of waiting until the call was ended and manually going on break or leaving for the day.

22. Plaintiff believed that this was a more efficient method for ending her work for that time period because she would automatically be logged-off when she hung up with the customer.

23. On or about July 1, 2019, Plaintiff was asked to meet with Mr. Mayowa and told that her station was being flagged as engaging in so-called "call avoidance."

24. According to Defendants' Employee Performance Guidelines, "[b]ehaviors resulting in not providing 100% of focus to the customer or not being ready to take calls when available will be considered call/customer avoidance."

25. Call avoidance can include "[m]anipulating the phones to keep one out of an available status or has the effect of altering an employee's place in line for the next available call."

26. Call avoidance is a violation of Defendants' policies.

27. Mr. Mayowa had a tablet that showed a list of the purported incidents when the call avoidance was occurring, but Plaintiff was not given an opportunity to review that list.

28. At that time, Plaintiff did not realize that it was her new method of logging out that was raising red flags and Plaintiff did not understand why her supervisor was saying that the system showed her engaging in call avoidance.

29. Mr. Mayowa asked Plaintiff to pay attention to what might be causing the red flags and reminded her not to engage in call avoidance.

30. On July 19, 2019, Mr. Mayowa met with Plaintiff in a conference room with a supervisor from another department who was there as a witness; Mr. Mayowa told her that Plaintiff was being placed on a written Employee Corrective Action Report because her station was still being flagged as engaging in call avoidance.

31. Specifically, the Employee Corrective Action Report claimed, "Carolyn manipulated her Avaya Aux Status by placing herself into break for a short duration of time in order to drop to the bottom of the calling queue."

32. The Report required that Plaintiff "must no longer manipulate her position in the calling queue by using break or any other idle codes going forward."

33. The Report was a *Final* Written Warning for misconduct, even though it was the *only written warning* Plaintiff received and it did not provide a particular time frame for remedying the issue.

34. The Report included a list of dates and times that the purported call avoidance actions were taken, nearly all of which occurred around the time that Plaintiff took her lunch or after 8 p.m., just before Plaintiff left for the day.

35. Plaintiff, however, was not given the opportunity to review the list of dates and times until after she was placed on the Final Written Warning.

36. Plaintiff signed the Report to acknowledge that she received it, although she still did not understand why her calls were being flagged as call avoidance because they were occurring prior to taking breaks.

37. According to Defendants' Corrective Action Policy, Corrective Actions are tracked for a period of six (6) months from the corrective action issue date.

38. On August 15, 2019, less than one month after she received the Employee Corrective Action Report, Plaintiff was again brought to the conference room with Mr. Mayowa and told that the call avoidance issue was still coming up and had not been resolved.

39. This time, having reviewed the list of dates and times on the Report, Plaintiff told Mr. Mayowa that she had been placing herself on break and logging off a different way than before and suggested that that was probably causing some of her calls to be flagged.

40. Plaintiff informed Mr. Mayowa that she did not fully understand what was causing the flags, but after reviewing the dates and times it may have been that she was logging out on the computer while on her last call going into her break time or end of her shift because she would automatically be logged-off when she hung up with the customer as stated above.

41. Plaintiff asked Mr. Mayowa if she reverted back to the former way of logging off whether that would prevent her calls from appearing on the call avoidance report.

42. Mr. Mayowa did not respond to Plaintiff's comments; he only stated that she was more than likely to be terminated.

43. Because Plaintiff had received no response about the log-off issue, she spoke to Mr. Mayowa again the next day.

44. During that meeting, Mr. Mayowa told Plaintiff that the Human Resources (HR) Department was too busy at that time, but they would have an answer for her soon.

45. On August 20, 2019 at 2:30 p.m., Plaintiff was just getting off the phone with a customer when Mr. Mayowa asked her to sign off her phone and led her to a small conference room near the front entrance.

46. There, Plaintiff met with Mr. Mayowa and an HR employee.

47. Plaintiff was told that she was being terminated for not correcting the call avoidance issue, however she was not shown any records at that time of her supposed call avoidance.

48. Despite Plaintiff's previous explanation, Defendants, by and through Mr. Mayowa, proceeded to terminate Plaintiff without conducting any investigation into Plaintiff's explanation or giving Plaintiff the opportunity to prove her explanation.

49. Indeed, in light of Plaintiff's explanation and the Report dates and times, which supported Plaintiff's explanation, Defendants knew and/or had reason to believe that Plaintiff was not engaging in "call avoidance" yet intentionally disregarded said facts.

50. Plaintiff was also told that her termination was considered a "lay-off" rather than a firing so that she could collect unemployment benefits.

51. Plaintiff was asked to remove her badge, but Plaintiff was not permitted to return to her desk; instead, Mr. Mayowa retrieved her belongings and walked her out to the parking lot.

52. Plaintiff later obtained records of her break times, which showed that from the date that Plaintiff was issued a Final Written Warning on July 19, 2019 to the date of her termination on August 20, 2020, there were only three instances when Plaintiff went into break status for less than a minute—the only occurrences that could even remotely be considered call avoidance—and each occurred during her regularly scheduled break time.

### *Pretextual Termination*

53. On or about August 20, 2019, Defendants terminated Plaintiff purportedly because it claimed that she had engaged in call avoidance, which Defendants claimed was a violation of its company policy that allegedly warranted termination.

54. Defendants' posited explanation for Plaintiff's termination is nothing more than pretext because of her age as evidenced by the fact that, as discussed above, Plaintiff had not engaged in call avoidance, all of the purported incidents occurred immediately prior to going on her break, lunch, or leaving for the day, and Defendants were aware of the true reason for the "flags" as explained by Plaintiff and supported by Defendants' own records.

55. Additionally, Defendants' employee, Mr. Mayowa, lied when he stated that the computer system "flagged" Plaintiff's computer for call avoidance because Defendants later admitted that Mr. Mayowa requested Plaintiff's "specific daily schedule and her phone activity log" without a basis in order to drum up a pretextual basis for her termination.

56. Moreover, Defendant gave Plaintiff less than two months to correct the purported infraction from the time that she was first notified.

57.     Defendant also decided to terminate Plaintiff almost immediately after she explained to them that the purported call avoidance infractions likely occurred because she was logging off her computer differently than she had before, without first conducting an investigation into Plaintiff's reasonable and accurate explanation.

### VII.    General Employment Law Allegations

#### A.    Age Discrimination

58.     Defendants discriminated against Plaintiff in the terms and conditions of her employment on account of her age; specifically, Defendants terminated Plaintiff on August 20, 2019.

59.     Plaintiff was fifty-seven (57) years of age at the time of her termination and clearly within the protected age class under applicable law.

60.     At all times relevant hereto, Plaintiff was among the oldest and highest paid employees in her department.

61.     Due largely to her thirty-four (34) years of service, Plaintiff maxed out on annual vacation with a paid time off accrual of six (6) weeks per year and was at the top of the pay scale for her position as a call center employee.

62.     On information and belief, there were only five other employees in Plaintiff's department of approximately twenty-five (25) people who were her age or older.

63.     Around the time of Plaintiff's discipline and termination, Plaintiff noticed that Defendants' managers increasingly acted more friendly toward and appeared to favor younger employees in the department.

64.     On information and belief, Defendants' intent to discriminate on account of Plaintiff's age is established, in part, based on the fact she was replaced, or her duties were assumed by one or more younger workers, thereby establishing a *prima facie* case of age discrimination.

65. On information and belief, Plaintiff's replacement is or was paid less compensation and/or benefits than Defendants had been paying to Plaintiff, thereby further supporting an inference of age discrimination.

66. Moreover, the decisionmaker or primary influencer relied upon for Plaintiff's termination, Mr. Mayowa, was younger than Plaintiff and outside of the protected class.

67. Defendants' intent to discriminate against Plaintiff on account of her age is further established, in part, by its failure to comply with its progressive discipline policy, including, but not limited to, failure to provide a written warning before a "final" written warning was issued and failure to adhere to its Corrective Action Policy by providing less than a month within which to correct her purported deficient conduct.

68. Defendants' intent to discriminate against Plaintiff on account of her age is further established, in part, by her abrupt termination after long and exemplary service without proper and reasonable notice, warning or opportunity to correct any purported deficiency.

69. Defendants' intent to discriminate on account of Plaintiff's age is further established, in part, based on the pretextual reason given for her termination discussed above.

*Pattern or Practice/Disparate Impact*

70. On information and belief, Defendants have engaged in an intentional pattern or practice of singling out older employees in the protected age class, included Plaintiff, for terminations, including but not limited to layoffs or terminations.

71. Alternatively, Defendants' ongoing policies and/or practices relating to layoffs and/or terminations are designed and/or implemented in a way that results in a discriminatory and disparate impact to older employees in the protected age class.

72. For example, on information and belief, younger employees are afforded more progressive discipline for the same or similar conduct than older employees such as Plaintiff.

73. Adverse employment action based in whole or *even in part* on account of a protected class status is a violation of the above-cited employment law provisions.

### B.   Harm

74. Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to, those described herein, are in violation of the ADEA, FEPA, and/or the RICRA, and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad-faith and/or with reckless or deliberate indifference to the statutorily protected rights of Plaintiff.

75. As a proximate result of Defendant's wrongful, unlawful, and/or discriminatory acts and/or omissions, including, but not limited to, those described herein, Plaintiff suffered, is now suffering, and will continue to suffer equitable and compensatory damages, including, but not limited to, loss of income, loss of equity, pain and suffering, emotional distress, loss of enjoyment of life, humiliation, damage to Plaintiff's professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

### VIII.   Causes of Action

76. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 of this Complaint in each of the counts below with the same force and effect as if fully set forth therein.

### Count One
*Age Discrimination in Employment Act*
*29 U.S.C. § 621, et seq.*

77. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination on the basis of age in violation of the ADEA, which has caused Plaintiff to suffer damages as aforesaid and thereby deprived Plaintiff of her rights secured under the ADEA.

### Count Two
*Rhode Island Fair Employment Practices Act,*
*R.I. Gen. Laws § 28-5-1, et seq.*

66. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination on the basis of age in violation of the FEPA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the FEPA.

### Count Three
*Rhode Island Civil Rights Act of 1990,*
*R.I. Gen. Laws § 42-112-1, et. seq.*

67. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination on the basis of age against Plaintiff, and thereby wrongfully interfered with Plaintiff's contract of employment in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the RICRA.

### IX. Prayers for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring the acts and/or omissions of Defendant, including, but not limited to those complained of herein, to be in violation of the ADEA, the FEPA, and/or the RICRA.

2. An injunction or other equitable relief directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An award of other equitable relief, including but not limited to an award of back pay as well as front pay and other compensation and/or benefits to make her whole

for all earnings and benefits she would have received but for Defendant's discriminatory conduct.

4.  An award of compensatory damages.

5.  An award of exemplary and/or punitive damages.

6.  An award of liquidated damages.

7.  An award of prejudgment interest, reasonable attorneys' fees, and costs.

8.  Such other and further relief as this Court deems just and proper.

### X. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

### XI. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

Plaintiff,
By his attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

Dated: April 27, 2021            **/s/ Richard A. Sinapi, Esq.**
                                 **/s/ Chloe A Davis, Esq.**
                                 **Richard A. Sinapi, Esq. (#2977)**
                                 **Chloe A. Davis (#9334)**
                                 2374 Post Road, Suite 201
                                 Warwick, RI 02886
                                 Phone: (401)739-9690
                                 FAX: (401) 739-9040
                                 Email: ras@sinapilaw.com
                                 Email: cad@sinapilaw.com

### CERTIFICATION

I hereby certify that on **April 27, 2021**, a true copy of the within was filed electronically via the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the Court's CM/ECF System. Service on the counsel of record has been effectuated by electronic means.

**/s/ Richard A. Sinapi**